IVAN JOHN SCALLAN                                     CIVIL ACTION

VERSUS                                               NO: 12-0773-JTM-SS

MICHAEL J. ASTRUE, COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

The plaintiff, Ivan John Scallan ("Scallan"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for disability insurance benefits and a period of disability under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423.

## PROCEDURAL HISTORY

On April 15, 2009, Scallan submitted an application for benefits reporting that: (1) he became unable to work on June 1, 2008 (R. 116-117); (2) he stopped working on the instructions of his doctor (R. 164); and (3) he suffered from diabetes, hepatitis, chronic liver disease and blood disorders (R. 167).  On July 15, 2009, the Commissioner denied his application for benefits.  R. 66-69.  On March 16, 2010, there was hearing before an Administrative Law Judge ("ALJ").  R. 30.  On April 26, 2010, the ALJ issued an unfavorable decision.  R. 16-26.  On January 25, 2012, the Appeals Council denied Scallan's request for review.  R. 1-5.  On March 22, 2012, he filed a complaint.  Rec. doc. 1.  Scallan and the Commissioner filed cross-motions for summary judgment.  Rec. docs. 15 and 16.  Scallan is represented by counsel in these proceedings.

## STATEMENT OF ISSUES ON APPEAL

**Issue no. 1**.     Did ALJ properly weigh the opinions of the treating physician; and did the ALJ give good reasons for rejecting the opinions of the treating physician?

**Issue no. 2**.     Did the ALJ properly evaluate Scallan's credibility?

### THE COMMISSIONER'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

1.     Scallan met the insured status requirements of the Act through December 31, 2012.

2.     Scallan has not engaged in substantial gainful activity since June 1, 2008, the alleged onset date (20 CFR 404.1571 et seq.).

3.     Scallan has the following conditions which are severe conditions within the constraints of Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985), and SSR 96-3p: non-Insulin dependent diabetes mellitus, hypertension, Hepatitis C, impaired visual acuity right eye and morbid obesity (20 CFR 404.1520(c)).

4.     Scallan does not have a condition or combination of conditions that meet or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). The following Listings are not met: 2.02 Loss of Visual Acuity; 4.03 Hypertensive Cardiovascular Disease; 5.05 Chronic liver disease; 9.08 Diabetes Mellitus; and SSR 02-1p Obesity.

5.     Scallan has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404. 1567(b) except walk and stand up to 4 hours out of an 8 hour day in increments of 30/45 minutes at a time and sit up to 6 hours out of an 8 hour day in increments of 30/45 minutes at a time. He should not be exposed to dangerous machinery or positions requiring fine binocular vision.

6.     Scallan is unable to perform his past relevant work (20 CFR 404.1565).

7.     Scallan was born in 1958 and was 52 years old at the time of the hearing, which is defined as an individual closely approaching advanced age (20 CFR 404.1563).

8.     Scallan has a limited education and is able to communicate in English (20 CFR 404.1564).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Scallan is "not disabled," whether or not Scallan has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering Scallan's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Scallan can perform (20 CFR 404.1569 and 404.1569(a)).

11.   Scallan has not been under a disability, as defined by the Act, from June 1, 2008, or at anytime through the date of this decision (20 CFR 404.1520(g)).

R. 18-25.

## ANALYSIS

a.   **Standard of Review.**

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Perez, 415 F.3d at 461. Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). This court may not re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. Perez, 415 F.3d at 461; Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992). Despite this court's limited function, it must

scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it.  Villa, 895 F.2d at 1022; Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled and eligible for disability insurance benefits, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (1997).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.  Id. §§ 404.1520, 416.920; Perez v. Barnhart, 415 F.3d at 461; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 514 U.S. 1120, 115 S. Ct. 1984 (1995).[1]  The five-step

---

[1] The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.

inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. Id. If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. Greenspan, 38 F.3d at 236; Kraemer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant." Id.; accord Selders, 914 F.2d at 618.

"In determining whether substantial evidence of disability exists, this court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective medical evidence of pain and disability; and (4) the claimant's age, education, and work history." Perez v. Barnhart, 415 F.3d at 462. "The Commissioner, rather than the courts, must resolve conflicts in the evidence." Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995).

b.  **Testimony at the Hearing.**

At the time of the hearing, Scallan was 52. R. 33. He did not attend school past the eighth grade. R. 33. He did not have a GED. R. 33. He could read, write, add and subtract. R. 33-34.

From 1991 to 2001 Scallan worked as a general laborer/helper in construction. R. 34. He also worked in a funeral home assisting the maintenance supervisor, in fire watch at a refinery, and at a store selling auto batteries. R. 34-36.

At the time of the hearing, Scallan had an appointment with a blood specialist, Dr. Caputo. R. 37 and 46. This was the third time he was to see him. R. 46. He had a follow-up appointment

---

Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

with a gastroenterologist, Dr. Abdul Kahn. R. 37 and 46. He went to Dr. Khan for cirrhosis of the liver and hepatitis C. R. 39. He had a problem with his platelets. When he went to the bathroom, he passed a lot of blood. R. 37.

Scallan began seeing Dr. Bertucci in 2007. R. 37. He saw see him about every three months for his diabetes. Dr. Bertucci referred him to an oncologist and a gastroenterologist. R. 37-38. Dr. Bertucci told him to apply for Medicaid. R. 38. He was granted Medicaid because of cirrhosis of the liver, hepatitis C and diabetes. R. 39. A doctor wanted to give him Interferon for the hepatitis but he was unable to pay for it. R. 39-40. Scallan began taking diabetes medication in 2007. R. 48.

Scallan had a large polyp in his colon which could require surgery. R. 49 and 51. Because of a stone in his gallbladder, Dr. Caputo removed the gallbladder in May 2009. R. 49-50. He was diagnosed with an inflamed liver. R. 50.

Scallan's right eye was pierced by a piece of steel which lodged behind his right eye. He had surgery on the eye. He was legally blind in the right eye. He also has glaucoma in his right eye. R. 53. He could not see out of his right eye. R. 54. He had problems with his left eye from working without safety glasses. Because of diabetes, he had a hard time focusing with the left eye, r. 53, but he could see out of his left eye. R. 54.

Scallan was fatigued. He felt "dragged down." He stayed in bed 14 to 15 hours per day. At least a couple of times a week, he felt so fatigued that he did not want to do anything, including watch TV. R. 40. Sometimes going back and forth to the bathroom brought on the spells of severe fatigue. R. 41. On the days that he did not experience these spells, he did some cooking, washing clothes, and other light activities in the house. He could not do all the household chores in one day. R. 41. In order to go anywhere, for example the hearing, he had to prepare for a couple of days in advance including careful attention to his diet and consumption of liquids. R. 42. He went to the

grocery store, but his feet burned when he walked. R. 42. He had serious problems with the joints in his feet. R. 43.

Scallan lived with someone else. R. 43. He could dress himself and take care of his personal hygiene. R. 43. By 4:00 p.m. most afternoons he felt tired. R. 44. He got up about 6:00 a.m. R. 44.

The vocational expert described his past relevant work as heavy and either semi-skilled or unskilled. R. 45. The expert testified that Scallan could not do his past relevant work. R. 57. Based on the hypothetical question posed by the ALJ, there were jobs that Scallan could perform. R. 58-59.

c.      **Medical Evidence**.

On January 26, 2008, Scallan was seen by Bryan Bertucci, M.D., at the St. Bernard Health Center for medication refills. He had a history of diabetes, hypertension, and hepatis C. Under physical findings, normal was checked in each category. The notes for treatment, diagnosis and patient instructions are illegible. R. 300.

On February 3, 2009, Scallan returned to Dr. Bertucci for a check-up for diabetes and medication refills. It was noted that he needed glucose test strips, but he could not afford them. Under physical findings, normal was checked in each category. The notes for the history of the present illness, physical findings, diagnosis are illegible. Under treatment there are references to an eye doctor, a POD for insulin delivery, and test strips. The patient instructions are illegible in part. They include instructions on medication. There is a note under patient instructions referring to control of the glucose. R. 263.

On February 3, 2009, Dr. Bertucci requested lab work and made referrals in connection with the diabetes diagnosis. R. 264. On February 10, 2009, there were: (1) a urinalysis report (R. 407);

(2) a normal ECG (R. 266); (3) a neoplasia group report (R. 402), (4) a chest x-ray - no acute abnormality identified (R. 265); and (5) a chemistry report (R. 254-56). It appears that Dr. Bertucci or his office reported the lab results to Scallan on February 10. R. 263 (2/10/09 handwritten note).

On February 25, 2009, there were reports on hepatitis/HIV testing. R. 256, 258, 261 and 405. On February 25, 2009, Scallan was seen by Dr. Bertucci for the results of the lab work. R. 298. On March 2, 2009, it was noted that Scallan was aware of the report that he was positive for hepatitis C. Due to financial difficulties he was referred to Jackson Barracks for further lab work. R. 258 and 284.

There is an undated report of a visit to Dr. Bertucci for a check-up. R. 297. It appears to be around March 2 as it is found between reports of visits on February 25 and March 31. R. 296-298.

On March 31, 2009, Scallan went to Dr. Bertucci for paperwork on his disability claim. R. 359. There were lab reports for March 31 and April 2. R. 305, 306, 307 and 309. On April 4, 2009, there is a note concerning medication for Scallan. R. 305. On April 16, 2009, there were lab reports. R. 380-393 and 344. On April 24, Scallan was notified of the results. R 380.

On April 20, 2009, there was an abdominal ultrasound because of abnormal or elevated liver function studies - hepatitis C. The impressions were: (1) gallstone disease; (2) there was no indication of a gallstone in the bile duct; and (3) enlarged liver and spleen. R. 270. On April 20, Scallan was seen by Dr. Bertucci for a check-up. R. 358. On April 29, 2009, Scallan was discharged from East Jefferson General Hospital. R. 286. It appears that Scallan's gallbladder was removed at this time. There are no other East Jefferson records.

On June 27, 2009, he went to Jack Rentz, M.D. for a consultative examination. R. 271-74.

On August 31, 2009, he returned to Dr. Bertucci for a check up. R. 294.

On October 6, 2009, there was lab work. R. 325-29 and 422. The results were reported to

Scallan on October 11, 2009. R. 325.

On December 2, 2009, Terry Lain, M.D.,issued a prescription for Lexapro, an antidepressant.

On December 23, 2009, Dr. Bertucci completed a multiple impairment questionnaire. R. 349-356 and 292-93.

On December 9, 2009, Scallan was seen by Dr. Abdul Khan, M.D., a gastroenterologist, on a referral from Dr. Bertucci. R. 416 and 430. The assessment included gastrointestinal bleeding, viral hepatitis, type C, and difficulty in swallowing. On December 10 and 11 there was lab work. R. 301-304, 319-20, 322-24, 347-48 and 369. On January 11, 2009, a CT scan of Scallan's abdomen was done at the request of Dr. Khan. A mass within the liver was not identified, the gallbladder had been removed, the spleen was enlarged, the wall of the colon was thickened with inflammation, and colitis was suggested. A follow-up ultrasound was recommended. R. 428-29. On January 13, there was lab work. R. 427. On January 21, 2010, Dr. Khan examined Scallan with an endoscope and colonscope. The impressions were: (1) small hiatal hernia; (2) gastritis; (3) polyp in the colon; and (4) diverticulosis. The polyp was not removed. He was to follow-up with Dr. Khan in two to three weeks. R. 424-25.

d.    **Plaintiff's Appeal.**

**Issue no. 1**.    Did ALJ properly weigh the opinions of the treating physician; and did the ALJ give good reasons for rejecting the opinions of the treating physician?

Scallan contends that the ALJ failed to apply the appropriate legal standard for weighing the opinions of Dr. Bertucci, the treating physician. In Newton v. Apfel, 209 F. 3d 448 (5th Cir. 2000), the Fifth Circuit stated:

> A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence.

Id. at 455 (quotation marks omitted).  Scallan contends that there was not good cause to discount the opinion of the treating physician and the ALJ did not consider each of the factors under 20 C.F.R. § 404.1527(d) before declining to give any weight to the opinions of Dr. Bertucci.

Scallan argues that there was no basis for the ALJ to conclude that:  (1) Dr. Bertucci was trying to assist him in obtaining benefits; and (2) Dr. Bertucci's opinions were inconsistent with his own progress notes and the findings from the Drs. Rentz and Khan.  Scallan urges that the ALJ ignored medical evidence cited by Dr. Bertucci to support his opinions.  He contends that: (1) because Dr. Bertucci's records are illegible, a remand is appropriate to permit Dr. Bertucci to supplement the record with findings; (2) Dr. Rentz was not provided with his medical records to review, so it was improper for the ALJ to rely on his opinion; and (3) the ALJ improperly adopted the opinion of a SSA clerk.

On December 23, 2009, Dr. Bertucci completed a multiple impairment questionnaire.  Dr. Bertucci reported that he began treating Scallan on April 26, 2007.  He opined that: (1) Scallan was able to sit 2 hours total and stand/walk 1 to 2 hours total during an 8-hour workday (R. 351); (2) he needed to get up and move around every 30 minutes when sitting and not sit again for 10 to 15 minutes (R. 351-352); (3) he could occasionally lift and carry up to 10 pounds (R. 352); (4) he had significant limitations performing repetitive reaching, handling, fingering, and lifting (R. 352); (5) he had moderate limitations (defined as significantly limited but not totally precluded) in his ability to use the left upper extremity for grasping, turning, and twisting objects and using both arms for reaching (R. 352-353); (6) his symptoms would likely increase if he was placed in a work environment (R. 353); (7) his pain, fatigue, or other symptoms "frequently" interfered with his attention and concentration (R. 354); (8) he was capable of no more than low stress work (R. 354); (9) he required breaks to rest at unpredictable intervals approximately every 1 to 2 hours during an

8-hour workday for 10 to 15 minutes each time (R. 354); (10) he would be absent from work, on the average, more than three times a month as a result of his impairments or treatment (R. 354); (11) he could do no pushing, pulling, kneeling, or bending (R. 355); and (12) psychological limitations and limited vision affected his ability to work at a regular job on a sustained basis (R. 354).

The ALJ stated:

> In accordance with SSR 96-2p I assign little weight to the opinions and conclusions of internist Bertucci rendered on December 23, 2009. It is apparent that internist Bertucci as his treating physician for over five years is attempting to assist claimant in receiving disability in that he can ascertain constant, consistent care for his condition. Internist Bertucci's opinions and conclusions are internally inconsistent with his own progress notes and further that of internist Rentz and G.I. specialist Khan.

R. 23.

In <u>Scott v. Heckler</u>, 770 F.2d 482, 485 (5th Cir. 1985), the ALJ rejected the treating physician's opinion that the claimant was totally disabled. In reversing and remanding the Fifth Circuit said:

> This court has repeatedly held that ordinarily the opinions, diagnoses and medical evidence of a treating physician who is familiar with the claimant's injuries, treatment, and responses should be accorded considerable weight in determining disability. There are exceptions to this principle. The ALJ may give less weight to a treating physician's opinion when "there is good cause shown to the contrary," as is the case when his statement as to disability is "so brief and conclusory that it lacks strong persuasive weight," is not supported by medically acceptable clinical laboratory diagnostic techniques, or is otherwise unsupported by the evidence. The ALJ may also reject a treating physician's opinion if he finds, with support in the record, that the physician is not credible and is "leaning over backwards to support the application for disability benefits." The administrative fact finder is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly. 770 F.2d at 485

In <u>Newton</u>, the ALJ rejected the opinion of the claimant's treating physician that the claimant could not perform any sedentary work. The Fifth Circuit reversed the decision of the ALJ and remanded for the purpose of requiring the ALJ to perform the analysis required by the SSR 96-2p

11

before rejecting the treating physician's opinion.

> The Court concludes that, absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2). Additionally, if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, <u>absent other medical opinion evidence based on personal examination or treatment of the claimant</u>, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e).

<u>Newton</u>, 209 F.3d at 453 (emphasis added).

In <u>Newton</u>, the claimant was diagnosed with systemic lupus erythematosus in September 1989 by Dr. Pertusi, a rheumatologist. The claimant sought benefits three years and three months later. During that period the claimant sought emergency room treatment on nine occasions and was admitted to a hospital on four occasions. The claimant was examined and treated by Dr. Pertusi frequently throughout the period. <u>Id</u>. at 452. Like Dr. Bertucci, Dr. Pertusi submitted an assessment with limitations. For example, the claimant could stand or walk less than two hours per regular work day. <u>Id</u>. at 453. At the hearing there was testimony from a medical expert <u>who had not examined or treated the claimant</u>, but who reviewed the medical records. The ALJ rejected Dr. Pertusi's opinion and relied on the medical expert. The Fifth Circuit reversed and stated:

> This is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another. *See and compare, e.g., Spellman v. Shalala,* 1 F.3d 357 (5th Cir.1993). Nor is this a case where the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion. *See and compare, e.g., Prosch v. Apfel,* 201 F.3d 1010 (8th Cir.2000). Instead, this is a case where the ALJ summarily rejected the opinions of Newton's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.

<u>Id</u>. at 458. In assigning little weight to Dr. Bertucci's December 23 opinion, the ALJ relied upon competing first-hand medical evidence from Dr. Rentz. The ALJ applied the appropriate legal

standard for weighing the opinions from Dr. Bertucci. The issue is whether there is substantial evidence to support the ALJ's reasons for assigning little weight to Dr. Bertucci's opinions.

The ALJ found that it was apparent that Dr. Bertucci was attempting to assist Scallan in receiving disability so that he could obtain constant and consistent care for his condition. R. 23. The ALJ cited the report of Scallan's March 31, 2009 visit to Dr. Bertucci where the chief complaint was "paperwork for disability." R. 359. Dr. Bertucci's notes for August 31, 2009 report that Scallan had filed for disability. On March 2, 2009, it was noted that due to Scallan's financial difficulty, he was referred by Dr. Bertucci to Jackson Barracks for further laboratory work. R. 258. A February 3, 2009 report indicated that Scallan was unable to afford test strips for diabetes. R. 263. Scallan testified that Dr. Bertucci told him to apply for Medicaid. R. 38. There is substantial evidence to demonstrate that Dr. Bertucci was aware of Scallan's inability to pay for medical services and that he was applying for disability. If Dr. Bertucci's opinions and conclusions are inconsistent with other medical evidence, it was reasonable for the ALJ to determine that Dr. Bertucci was attempting to assist Scallan in receiving disability benefits.

Dr. Rentz concluded that Scallan was not substantially impaired from working, noting that Plaintiff's greatest obstacle on a daily basis was fatigue, nausea, and pain associated with hepatitis R. 271 and 273. Dr. Rentz stated that he remained independent with his activities of daily living and was cognitively intact. R 271-72. Dr. Rentz found that Scallan could sit, walk, and/or stand for a full workday, lift/carry objects without restrictions, hold a conversation, respond appropriately to questions, and carry out and remember instructions. R. 273. Dr. Rentz's report is inconsistent with the opinions and conclusions found in the December 23, 2009 questionnaire completed by Dr. Bertucci.

On December 23, 2009, Dr. Bertucci reported that he had diagnosed Scallan with Hepatitis

C, which caused him to fatigue easily.  R. 349-50.  He cited laboratory work on March 31 and December 10, 2009.  R. 350.  Scallan reported to Dr. Rentz that his biggest obstacle on a daily basis was the fatigue, nausea and soreness with Hepatitis C.  R. 271.  Dr. Rentz diagnosed him with Hepatitis C.  R. 273.

On February 25, 2009, there was a laboratory report for Hepatitis/HIV testing. R. 258-260. Scallan tested positive for Hepatitis B, but he was considered to immune to Hepatitis B infection. R. 258.  He tested positive for Hepatitis C.  R. 259.  The HCV was an antibody screen.  R. 260. Although he was referred to Jackson Barracks for further testing, there is no report of test results from Jackson Barracks.  R. 258.

On December 9, 2009, Scallan was seen by Dr. Khan, a gastroenterologist, on a referral from Dr. Bertucci because of Hematochezia (the passage of fresh blood through the anus) and Hepatitis C.  The diagnosis was gastrointestinal bleeding, Hepatitis Type C, and difficulty swallowing.  R. 431.  Dr. Khan ordered: (1) a Hepatitis C Viral RNA quantitative test and other Hepatitis/HIV tests; (2) an ultrasound of the abdomen; (3) a colonoscopy; and (4) a test to examine the lining of the esophagus (EGD).  R. 431.

The Hepatitis C Viral RNA quantitative test confirmed the infection. R. 304.  The ultrasound revealed a questionable mass in the liver.  The spleen was enlarged.  R. 287.  Because of these results, there was a CT of the abdomen on January 11, 2010.  A mass within the liver was not identified.  The spleen was enlarged.  Colitis (inflammation of the colon) was suggested.  R. 428-29.

On January 21, 2010, Dr. Khan performed the colonscope and EGD test.  R. 424-25.  The colonoscopy revealed a polyp which was not removed.  Diverticulosis was found of mild severity. R. 424.  The EGD revealed a small hiatal hernia.  A biopsy was taken to test for gastritis.  R. 424. A pathology report from Kenneth B. Farris, M.D., on the stomach specimen revealed: (1) chronic

gastritis (inflammation); (2) the condition was mild; and (3) the test for Helicobacter organisms was negative. R. 426. Dr. Khan recommended a follow-up visit in two to three weeks but there are no further records from Dr. Khan. R. 424.

Although the lab test ordered by Dr. Khan confirmed the Hepatitis C infection (R. 304), a mass within the liver was not identified. R. 428-29. There was no liver biopsy to determine the condition of the liver. The ALJ noted that Scallan had only slightly raised liver diagnostic readings, which were not associated with major liver pathology. R. 20. Dr. Bertucci's opinions and conclusions on limitations caused by Scallan's severe fatigue are inconsistent with the results of tests performed by or for Dr. Khan.

The ALJ noted that Scallan had never voiced difficulty with memory or concentration and his activities of daily living were inconsistent with an individual suffering from severe fatigue. R. 23. The notes for the psychiatric portion of the physical exam performed by Dr. Khan on December 9, 2009, indicate that the memory was within normal limits for recent and remote events. R. 431. On the June 27, 2009 examination by Dr. Rentz, Scallan denied any difficulty concentrating or sleeping at night. R. 272.

On December 23, 2009, Dr. Bertucci indicated that Scallan had significant limitations in doing repetitive reaching, fingering or lifting with the explanation that he had shoulder pain. R. 352. He indicated that Scallan had moderate limitations in the left arm for grasping, turning and twisting objects (R. 352) and moderate limitations in both arms for reaching, including overhead reaching (R. 353). Dr. Rentz found a normal range of motion in each joint. R. 274. Scallan only reported to Dr. Rentz a decreased range of motion in the left arm. He did not report a problem with the right arm. R. 271. As the Commissioner notes, Dr. Rentz's examination contradicts Dr. Bertucci's opinion that Scallan had severe limitations restricting him to sedentary work.

Scallan contends that because some of Dr. Bertucci's treatment records are illegible, the case should be remanded so that Dr. Bertucci can clarify and supplement his treatment notes. Scallan argues that it is not clear what findings in Dr. Bertucci's notes the ALJ found were incompatible with the December 23, 2009 opinion.

> [I]f the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e).

Newton, 209 F.3d at 453. The ALJ did not determine that Dr. Bertucci's records were inconclusive or inadequate. There was other medical opinion evidence from Drs. Rentz and Kahn which was based on personal treatment of Scallan. The ALJ was not required to seek clarification from Dr. Bertucci on any illegible treatment notes.

The ALJ did not "pick and choose" among the evidence as alleged by Scallan, rather he evaluated the evidence as a whole and determined it did not support the extent of pain and limitation alleged by Scallan. The ALJ properly weighed the opinions of the treating physician. The ALJ gave good reasons for rejecting Dr. Bertucci's opinions and conclusions. There is substantial evidence for these reasons.

**Issue no. 2**. Did the ALJ properly evaluate Scallan's credibility?

Scallan contends that: (1) the ALJ failed to properly evaluate his credibility because he employed the wrong legal standard; (2) the ALJ evaluated the consistency of his statements against the ALJ's determination of the RFC rather than the evidence of record; (3) in Bjornson v. Astrue, 671 F.3d 640, 645-46 (7th Cir. 2012), the Seventh Circuit determined that the language employed by the ALJ in this claim was insufficient for a credibility determination; and (4) the ALJ's findings were insufficient to support the negative credibility finding. Rec. doc. 15 (Memorandum at 15-18).

The Commissioner responds that: (1) there is no merit to the contention that the ALJ applied the wrong legal standard; (2) the language in <u>Bjornson</u> addressing boilerplate language is *dicta* and is non-binding; and (3) substantial evidence supports the ALJ's credibility assessment.  Rec. doc. 16 (Memorandum at 11-13).

20 C.F.R. §404.1529 describes how the Commissioner evaluates symptoms, including pain. The most important symptom for Scallan is the fatigue which he contended was so severe as to require him stay in bed 14 to 15 hours per day.  R. 40.  Section 404.1529(a) ("Subpart A") requires the consideration of all of Scallan's symptoms and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  Objective medical evidence refers to medical signs which can be observed, for example, Dr. Rentz's finding of no muscle atrophy, and laboratory findings, for example, the absence of a mass within the liver on the CT of the abdomen.  Other evidence refers to statements or reports from Scallan or his treating physicians, including Dr. Bertucci.  <u>Id</u>.

> [S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged. . . ."

<u>Id</u>.  Scallan acknowledges that up to this point, the ALJ proceeded as required by the Regulation. Rec. doc. 15 (Memorandum at 16).  The Regulation provides that this determination does not involve a determination as to the intensity, persistence, or functionally limiting effects of symptoms. Section 404.1529(b).

When the determination required by Subpart A is made, Section 404.1529(c) provides that the Commissioner "must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work."  20 C.F.R. §404.1529(c)(1)

("Subpart C"). Social Security Ruling 96-7p, 1996 WL 374186 (S.S.A.) ("SSR 96-7p"), clarifies when the evaluation of symptoms under Section 404.1529 requires a finding of credibility. It states that the Subpart C evaluation "requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects." SSR 96-7p.

Immediately after making the finding on Scallan's RFC, the ALJ stated that: (1) he considered all symptoms; and (2) he considered the extent to which they can reasonably be accepted as consistent with the objective medical evidence and other evidence. He reported that, in considering Scallan's symptoms, he must follow a two step process: the first step described by ALJ is Subpart A; and the second step described by him is Subpart C. At this point the ALJ stated:

> For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record.

R. 21. This statement is a nearly verbatim quote from SSR 96-7p, *3.

First, the ALJ considered Scallan's hepatitis B and C, diabetes mellitus, the impaired visual acuity in the right eye, and the regulation of his platelets. R. 21-22. The ALJ found that Scallan's medically determinable impairments could reasonably be expected to cause the alleged symptoms. R. 22. The ALJ made the determination required by Subpart A.

The ALJ stated that Scallan's "statements concerning the intensity, persistence and limiting effects of the symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." The ALJ's statement conforms to Subpart C. Immediately following this statement, the ALJ describes the grounds for the Subpart C determination. The ALJ describes Dr. Khan's December 9, 2009 examination of Scallan. He comments on the evidence, for example the absence of any complaints from Scallan regarding neuropathy. He notes evidence

regarding Scallan's vision and platelet count.  R. 22.

In <u>Bjornson</u>, the Seventh Circuit described the following statement in the ALJ's opinion as

boiler plate.

> After careful consideration of the evidence, the undersigned [administrative law judge] finds that the claimant's medically determinable impairments would reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

671 F.3d at 644 -645.  The Commissioner described it as a "template" which was drafted by the SSA

for insertion into any ALJ's opinion to which it pertains.  <u>Id</u>.  The statement is almost identical to

the statement in the Scallan decision.  The Seventh Circuit criticizes the statement because: (1) it

yields no clue as to what weight the trier of fact gave the testimony; (2) it fails to inform the

Appellate Court of the specific evidence the ALJ considered in determining that the claimant's

complaints were not credible; (3) the ALJ did not link the conclusory statement to evidence in the

record; and (4) the ALJ's assessment of the claimant's RFC came <u>after</u> the statement.  These

deficiencies are not present in the decision on Scallan.  The ALJ described Scallan's testimony as

"much exaggerated."  R. 22.  It is clear what weight he gave to Scallan's testimony.  A description

of the evidence considered by the ALJ in determining that Scallan's complaints were not credible

follows the statement that his testimony is exaggerated.  This evidence demonstrates the link

between the ALJ's statement on credibility and the evidence in the record.  The assessment of

Scallan's RFC came <u>before</u> the statement.

The Seventh Circuit concluded that the statement demonstrated that the ALJ ignored the

claimant's credibility in the determination of her ability to do work.  671 F.3d at 645-646.  In the

Scallan decision, the determination on credibility is <u>part</u> of the finding on Scallan's RFC.  It was not

ignored in making the RFC finding. Immediately after the finding of Scallan's RFC, the ALJ states that "in making this (RFC) finding, I have considered all of the symptoms. . . ." R. 21. "In considering the claimant's symptoms, I must follow a two-step process. . . ." R. 21. The two step process requires the ALJ to make the Subpart A and Subpart C determinations, which he did. The ALJ applied the appropriate legal standards in evaluating the evidence of Scallan's credibility. The remaining issue is whether there is substantial evidence for the ALJ's determination on Scallan's credibility.

The ALJ considered Scallan's activities of daily living. 20 C.F.R. §404.1529(c)(3)(i) ("[y]our daily activities"). He noted that Scallan was able to care for his personal hygiene, he had good and bad days, on good days he cooked and did laundry, and he shopped by himself. R. 21. The ALJ noted that Dr. Khan's December 9, 2009 examination of Scallan was unremarkable for pathology. R. 22. The absence of complaints regarding diarrhea, difficulty concentrating, neurpathy and difficulty keeping pace with others were noted. R. 22. 20 C.F.R. §404.1529(c)(3)(i) ("frequency, and intensity of your . . . symptoms"). The ALJ referred to objective medical evidence, for example the absence of diabetes retinopathy (damage to small blood vessels in the retina) and pressures in the eye were at the normal range. R. 22. There is substantial evidence for the ALJ's finding that Scallan's testimony was much exaggerated and was not credible. The Court may not re-weigh the evidence. Perez, 415 F.3d at 461;

## **RECOMMENDATION**

Accordingly, IT IS RECOMMENDED that defendant's cross-motion for summary judgment (Rec. doc. 16) be GRANTED and plaintiff's motion for summary judgment (Rec. doc. 15) be DENIED.

**<u>OBJECTIONS</u>**

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 19th day of November, 2012.

**SALLY SHUSHAN**
**United States Magistrate Judge**